UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIFFANY S. BURTON,

                           Plaintiff,

v.

ANDREW W. SAUL,
COMMISSIONER OF
SOCIAL SECURITY,[1]


                           Defendant.

_____/

Civil Action No.: 18-13103
Honorable George Caram Steeh
Magistrate Judge Elizabeth A. Stafford

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 18, 21]

Plaintiff Tiffany S. Burton appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied her application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court **RECOMMENDS** that:

- Burton's motion [ECF No. 18] be **GRANTED**;

---

[1] Under Federal Rule of Civil Procedure 25(d), Saul is the successor defendant.

- the Commissioner's motion [ECF No. 21] be **DENIED**; and

- the matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this report and recommendation.

## I.   BACKGROUND

### A.   Burton's Background and Disability Applications

Born February 2, 1980, Burton was 33 years old on the alleged disability onset date of April 27, 2013.  [ECF No. 14-2, PageID.77, 86].  She had past relevant work as a teacher's aide.  [*Id.*, PageID.86].  Burton claimed disability from multiple sclerosis (MS), depression, diabetes and headaches.  [ECF No. 14-3, PageID.136].

After a hearing, during which Burton and a vocational expert (VE) testified, the ALJ found Burton not disabled.  [ECF No. 14-2, PageID.74-88, 94-112].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [ECF No. 14-2, PageID.54-57].  Burton timely filed for judicial review.  [ECF No. 1].

### B.   The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

2

can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by

analyzing five sequential steps.  First, if the applicant is "doing substantial

gainful activity," he or she will be found not disabled.  20 C.F.R.

§ 404.1520(a)(4).  Second, if the claimant has not had a severe impairment

or a combination of such impairments[2] for a continuous period of at least

12 months, no disability will be found.  *Id.*  Third, if the claimant's severe

impairments meet or equal the criteria of an impairment set forth in the

Commissioner's Listing of Impairments, the claimant will be found disabled.

*Id.*  If the fourth step is reached, the Commissioner considers its

assessment of the claimant's residual functional capacity (RFC), and will

find the claimant not disabled if he or she can still do past relevant work.

*Id.*  At the final step, the Commissioner reviews the claimant's RFC, age,

education and work experiences, and determines whether the claimant

could adjust to other work.  *Id.*  The claimant bears the burden of proof

throughout the first four steps, but the burden shifts to the Commissioner if

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14

F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Burton was not

disabled.  At the first step, he found that Burton had not engaged in

substantial gainful activity since the alleged onset date of April 27, 2013.

[ECF No. 14-2, PageID.77].  At the second step, he found that Burton had

the severe impairments of "lumbar radiculopathy, cervical and thoracic pain

status post motor vehicle accident, multiple sclerosis, myalgias with hand

pain, status post left shoulder arthroplasty, asthma, obesity, depression,

anxiety, and post-traumatic stress disorder (PTSD)."  [*Id.*].  He found that

Burton's gastroesophageal reflux disease (GERD) was a non-severe

impairment and that impairments outlined in a prior decision were no longer

medically determinable impairments.  [*Id.*].  Next, the ALJ concluded that

none of Burton's impairments, either alone or in combination, met or

medically equaled the severity of a listed impairment.  [*Id.*, PageID.77-80].

Between the third and fourth steps, the ALJ found that Burton had the

RFC to perform light work, except that she:

> can never climb ladders, ropes or scaffolds.  She can
> occasionally climb ramps and stairs, balance, stoop, kneel, and
> crouch.  [She] can never reach overhead.  She can frequently,
> but not constantly, reach in all other directions, handle and
> finger.  Whenever walking, [she] must use a cane.  She can
> tolerate occasional exposure to environmental pollutants such

4

as dust, fumes, and smoke.  [She] can never work around hazards such as unprotected heights or unguarded, uncovered moving machinery.  She can understand, remember, and carry out simple, routine, and repetitive instructions.  [She] can make simple work-related decisions.  She can tolerate routine changes in work place.  [She] can have occasional interaction with coworkers and supervisors.  She can never interact with the general public.

[ECF No. 14-2, PageID.80].  At step four, the ALJ found that Burton was not capable of performing her past relevant work as a teacher's aide.  [*Id.*, PageID.86].  At the final step, after considering Burton's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs in significant numbers that Burton could perform, including positions as office helper, mail sorter and inspector.  [*Id.*, PageID.87].

## II.   ANALYSIS

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the

5

evidence in the record below may be considered when determining

whether the ALJ's decision is supported by substantial evidence.  *Bass v.*

*McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Burton argues the ALJ erred in not properly: 1) evaluating the opinion

of her treating physician; 2) considering evidence of her migraine

headaches; 3) evaluating her subjective symptoms; and 4) including all of

Burton's limitations within the hypothetical for the VE.  [ECF No. 18].  The

Court finds that the ALJ did not violate the treating physician's rule, but that

he did fail to evaluate the effects of Burton's migraine headaches on her

RFC, so the matter should be remanded for further consideration.   On

remand, the ALJ should re-evaluate Burton's subjective symptoms and the

hypothetical for the VE.

## A.

The "treating physician rule" requires an ALJ to give controlling

weight to a treating physician's opinions about the nature and severity of a

claimant's condition when those opinions are well-supported by medically

acceptable clinical and diagnostic evidence, and not inconsistent with other

substantial evidence.[3]  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d

---

[3] Under new administrative rules, ALJs will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record. 20 C.F.R. §§ 404.1520b; 416.920c. *Wolfe v.*

at 242-43.  An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so; "these reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

Even when a treating opinion is considered not controlling, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion.  *Gentry*, 741 F.3d at 723.  In all cases, a treating physician's opinion is entitled to great deference.  *Id.*

---

*Comm'r of Soc. Sec.*, 16-13620, 2017 WL 6627044, at *7 (E.D. Mich. Nov. 26, 2017), *adopted,* 2017 WL 6621538 (E.D. Mich. Dec. 28, 2017). But the new rules apply only to claims filed on or after March 17, 2017. *Id.* Because Burton filed her claim well before March 17, 2017, the "treating physician rule" still applies. SSR 96-2.

The ALJ assessed the November 2016 opinions of treating primary care physician Amaning K. Sarkodie, M.D., about the severity of Burton's physical limitations and assigned them little weight.  [ECF No. 14-2, PageID.84].  Dr. Sarkodie opined that, mainly because of her MS symptoms, Burton could sit, stand and walk for no longer than a half an hour at a time, and for no longer than a half an hour for an entire eight-hour day.  [ECF No. 14-12, PageID.676].  He also believed that she would need to lay down up to four times per day and would miss 30 work days per month.  [*Id.*].

The ALJ discounted Dr. Sarkodie's opinions because his "extreme limitations are not generally consistent with [his] own examination findings," and he seemingly based his opinions on Burton's subjective complaints. [ECF No. 14-2, PageID.83-84].  The Court agrees that the extreme limitations—especially that Burton could sit, stand or walk for no more than a half an hour each in an eight-hour day and would miss 30 days of work per month—are not well-supported by medically acceptable evidence, and are inconsistent with other substantial evidence.  As noted by the ALJ, Dr. Sarkodie's examination notes for the same day of his opinion stated that Burton had joint pain, stiffness, tenderness and back pain and an abnormal gait that required a cane, but she denied having trouble walking, reaching

8

above her head or rising from a sitting position without assistance, and she had no neurological symptoms.  [ECF No. 14-12, PageID.680-681].  The ALJ's assessed RFC incorporated her need for a cane. [ECF No. 14-2, PageID.80].  The ALJ also reasoned that Burton's neurologist, David D. Gill, Jr., D.O., described her as having normal or near-normal lower extremity strength, an intact cerebellar examination, and a stable gait without rigidity or spasticity. [ECF No. 14-13, PageID.709-710, 725-726, 742-743, 759-760, 776-777].  His treatment records routinely noted that Burton "was doing well."  [*Id.*].

Burton's MS is well-documented in her treatment records, but diagnosis alone does not dictate a finding of disability or for greater physical restrictions.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  And although Dr. Gill's records mention Burton's complaints of migraine headaches, tremors and leg spasms, neither his records nor those of Dr. Sarkodie support Dr. Sarkodie's opinion that Burton could only sit, stand and walk for a half an hour in an entire eight-hour day and that she would miss work daily.  The ALJ stated good reasons for discounting Dr. Sarkodie's opinions.

**B.**

Burton argues that the ALJ committed reversible error by failing to address the evidence of her migraine headaches.  The Court agrees.

An ALJ must consider as a threshold matter whether a claimant has a severe impairment.  20 C.F.R. §404.1520(a)(4).  "Once one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009); *see also Garcia v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 805, 810–11 (S.D. Ohio 2015). ("Where, as here, the ALJ finds at Step Two that a claimant suffers from at least one severe impairment, the ALJ is required to consider the limiting effects of *all* impairments—including limitations resulting from non-severe impairments—when determining the claimant's RFC at Steps Four and Five.")  (emphasis in original).

An ALJ's error in considering an impairment non-severe is harmless if that impairment is considered in the remaining steps of the decision.  *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (internal citation and quotation marks omitted).  But "[f]ailure to state the basis, for including no limitations arising from non-severe impairments, is reversible

10

error." *Napier v. Comm'r of Soc. Sec.,* No. 3:15-CV-154, 2016 WL 5334507, at *4 (S.D. Ohio Sept. 23, 2016).

In *Napier*, the ALJ failed to specify whether the claimant's documented migraines and spinal issues were severe or non-severe, and failed to discuss their limiting effects, even though those conditions are impairments under the controlling regulation. *Id.* at *3-*4.  The court rejected the Commissioner's *post hoc* argument that the ALJ could reasonably have found that his RFC finding was adequate to accommodate those limitations; the ALJ had not explained the bases for including no limitations related to those impairments, and that was reversible error.  *Id.*

In *Blevins-Bryant v. Colvin*, the court likewise found that, even if the ALJ's findings were supported by substantial evidence, the ALJ's failure to consider the plaintiff's migraine headaches throughout the sequential analysis was reversible error. No. 3:14CV00237, 2015 WL 4498573, at *4–5 (S.D. Ohio July 23, 2015), *adopted*, 2015 WL 4743034 (S.D. Ohio Aug. 11, 2015).  And in *Buckmaster v. Saul,* the court found reversible the ALJ's failure "to explicitly address whether he concluded Plaintiff would or would not have any migraines and, if she does, whether those migraines would cause her to be absent from work while she was having them."  No. 1:18-CV-135-CHS, 2019 WL 4723802, at *5 (E.D. Tenn. Sept. 26, 2019)

11

The ALJ here also erred by failing to explicitly address the limiting effects, if any, of Burton's migraine headaches despite evidence showing that she had on-going treatment for headaches. Her first treating neurologist, Iftikhar A. Khan, M.D., noted increasing headaches with photophobia and dizziness among her symptoms in 2013 and 2014.  [ECF No. 14-7, PageID.436-438].  Her current neurologist, David D. Gill, Jr., D.O., also reported that Burton had intermittent issues with headaches. [ECF No. 14-13, PageID.709].  In 2016, Dr. Gill diagnosed occipital neuritis as a possible cause of her chronic headaches and prescribed physical therapy with soft tissue techniques to try to resolve this issue.  [ECF No. 14-13, PageID.744].  Dr. Gill reported that physical therapy had not been beneficial for her headaches and that they had progressed into migraines, occurring once to twice a week, with latent sound sensitivity and nausea. [*Id.*, PageID.759].  Dr. Gill prescribed Elavil and Imitrex for her migraines, as well as Norco for any breakthrough pain.  [*Id.*, PageID.761].

At the hearing, Burton testified that she began having migraines in 2011, and that she continued to have at least three or four a month.  [ECF No. 14-2, PageID.106].  She testified that they last anywhere from two hours to all day, and that she must take her medicine and lay down in darkness to alleviate them.  [*Id.*, PageID.106-107].

12

Despite this evidence, the ALJ did not mention headaches in his discussion of Burton's severe and non-severe impairments.  [ECF No. 14-2, PageID. 77].  In fact, the ALJ referred to Burton's headaches only to note that she had "complained of short headaches." [ECF No. 14-2, PageID.82]. There is no mention of Dr. Khan's or Dr. Gill's discussion and treatment of her headaches, nor of her testimony about them at hearing.  Nor is there evidence that the ALJ addressed or included any limitations from the headaches in the RFC even though he specifically assigned the RFC's various restrictions to their corresponding impairments.  [ECF No. 14-2, PageID.85-86].  The ALJ detailed how the assessed RFC accommodated Burton's MS, asthma, medication side effects and mental impairments, making no mention of her migraine headaches.  [*Id.*].  The omission of headaches from this recitation of corresponding impairments and restrictions suggests that the ALJ failed to consider headaches when developing Burton's RFC.

A court "cannot infer from a silent record that the ALJ considered [an] impairment in rendering his RFC finding."  *Meadows v. Comm'r of Soc. Sec.,* 1:07CV1010, 2008 WL 4911243, at *13 (S.D. Ohio Nov. 13, 2008). The ALJ's silence on Burton's migraine headaches warrants a remand for further development and clarification of the extent to which her headaches

13

affect her ability to work.  The ALJ should also be required to reevaluate Burton's subjective symptoms[4] and the hypothetical for the VE.

## III.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Burton's motion [ECF No. 18] be **GRANTED**; that the Commissioner's motion [ECF No. 21] be **DENIED**; and that this matter be **REMANDED** for further consideration under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
Dated: November 18, 2019            United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

---

[4] On remand, the ALJ should not draw inferences about Burton's symptoms and their functional effects from a failure to comply fully with treatment without considering possible reasons she may not have complied with treatment.  To this end, the ALJ may ask Burton about the instances in which she failed to take her medication as prescribed.  SSR 16-3p, 2017 WL 5180304, *9-10; *Polhemus v. Colvin*, 14-14442, 2016 WL 949218, *4-5 (E.D.Mich. March 14, 2016).

14

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.